# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CLARENCE E. PORTER, as Administrator of the Estate of MAXINE GILLIS, *deceased*, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES OF AMERICA; CLASSY CAB COMPANY, INC., t/a/d/b/a STAR TRANSPORTATION GROUP, INC., AIR STAR TRANSPORTATION & LIMOUSINE SERVICE, INC., CRANBERRY TAXI, INC., And VETERAN'S TAXI; DE VOKA GORDON, An Adult Individual; <br><br> Defendants. | Civil Action No.: 2:22-cv-734 <br><br> **COMPLAINT** <br><br><br><br><br><br> Filed on Behalf of the Plaintiff: <br> Clarence E. Porter, Administrator <br><br><br> Counsel of Record for this Party: <br><br> Matthew J. Scanlon, Esq. <br> PA I.D. #307209 <br><br> Timothy Grant Wojton, Esq. <br> PA I.D. #307894 <br><br> Scanlon & Wojton, LLC <br> 304 Ross Street, Suite 510 <br> Pittsburgh, PA 15219 <br> 412-918-1241 (phone) <br> 412-235-7275 (fax) <br><br> **<u>JURY TRIAL DEMAND</u>** |

## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CLARENCE E. PORTER, as Administrator of the Estate of MAXINE GILLIS, *deceased*, | Civil Action No.: 2:22-cv-734 |
| Plaintiff, | |
| v. | |
| UNITED STATES OF AMERICA; CLASSY CAB COMPANY, INC., t/a/d/b/a STAR TRANSPORTATION GROUP, INC., AIR STAR TRANSPORTATION & LIMOUSINE SERVICE, INC., CRANBERRY TAXI, INC., And VETERAN'S TAXI; DE VOKA GORDON, An Adult Individual; | |
| Defendants. | |

## COMPLAINT IN CIVIL ACTION

AND NOW, comes the Plaintiff, Clarence E. Porter, as Administrator of the Estate of Maxine Gillis, deceased, by and through his counsel, Matthew J. Scanlon, Esq, Timothy Grant Wojton, Esq., and Scanlon & Wojton, LLC, and files the within Complaint, and in support thereof, avers as follows:

## PARTIES

1. Plaintiff, Clarence E. Porter, is an adult individual residing at 141 Marlow Drive, Penn Hills, PA 15235 and is the appointed and sworn Administrator of the Estate of Maxine Gillis, deceased ("Decedent"), having been so appointed by the Register of Wills of

    Allegheny County in the Commonwealth of Pennsylvania, on May 19, 2021. *See Short Certificate, attached hereto as Exhibit "A".*

2. Decedent Maxine Gillis died on March 19, 2021.

3. Defendant, United States of America (hereinafter referred to as the "United States"), maintains the United States Department of Veterans Affairs and its divisions and subdivisions.

4. The Unites States Department of Veterans Affairs was established by Congress, in part, to administer a government healthcare system for military veterans of the United States of America and includes within its purview administration of the VA Healthcare System.

5. The VA Healthcare System provides health care to veterans including medical, nursing, surgical and rehabilitation care for eligible veterans who served in the Armed Forces of the United States.

6. The Pittsburgh VA Healthcare System is a division of the U.S. Department of Veterans Affairs, and provides healthcare to veterans at facilities, including but not limited to, the Pittsburgh VA Medical Center, situated at 4100 Allequippa Street, Pittsburgh, PA 15240.

7. At all times relevant hereto, Defendant United States was acting by and through its duly authorized agents, servants and/or employees, ostensible or otherwise, who were then and there acting within the course and scope of their employment or agency.

8. The Pittsburgh VA Medical Center, (hereinafter referred to as "Pittsburgh VA"), is the main campus in the Pittsburgh VA Healthcare System, and it operates as a healthcare provider, offering primary care and specialty health services, including cardiology, neurology, orthopedics, pulmonary medicine and internal medicine.

9. At all times relevant hereto, the Pittsburgh VA is organized and established, and operated and conducted business as, a division of the U.S. Department of Veterans Affairs, and indeed, is owned, controlled, operated and maintained by the U.S. Department of Veterans Affairs.

10. As such, the Pittsburgh VA is organized to provide healthcare utilizing licensed healthcare professionals.

11. Defendant, United States of America, (hereinafter referred to as "USA"), on the evening of March 18, 2021 and into the early hours of March 19, 2021, upon information and belief, undertook the responsibility to arrange a taxi service for Plaintiff's Decedent, Maxine Gillis, to be transported from the hospital to the home of Plaintiff's sister, Toni McClendon.

12. Defendant, Classy Cab Company, Inc., (hereinafter referred to as "Taxi") is a transportation service operating in the Commonwealth of Pennsylvania with a business location situated at 8541 Peters Road, Unit 2, Cranberry Township, Butler County, PA 16066. This Defendant, upon information and belief, is the company contacted by staff at the VA facility where Mr. Porter was being treated, to safely transport Ms. Gillis to her intended destination, the entrance to the home of Toni McClendon.

13. Defendant, De Voka Gordon, is an adult individual residing at 2285 William Penn Highway, Pittsburgh, PA 15235. Ms. Gordon owns the residence, including swimming pool, where Ms. Gillis perished on March 19, 2021.

## JURISDICTION AND VENUE

14. This action is brought pursuant to the Federal Tort Claims Act, 28 U.S.C. §2671.

15. This action is brought pursuant to wrongful death and survival claims established by statutory law in Pennsylvania.

16. Venue is proper within this district under 28 U.S.C. §1402(b) as the acts complained of occurred in the Western District of Pennsylvania.

17. The above-captioned matter is being brought against the United States of America pursuant to 28 U.S.C. §2671, *et seq.* (Federal Tort Claims Act), and 28 U.S.C. §1346(b)(1) for money damages, compensation for personal injuries and death that were caused by the negligence and wrongful acts and omissions of the agents, servants and employees of the United States Government while acting within the course and scope of their offices and employment, under circumstances where the United States, if a private person, would be liable to the Plaintiff in accord with the laws of the Commonwealth of Pennsylvania.

18. Plaintiff is alleging negligence, i.e., a breach of a duty, which caused Ms. Gillis to suffer harm and perish, against Defendants Classy Cab and De Voka Gordon.

## FACTUAL BACKROUND COMMON TO ALL COUNTS

19. Plaintiff, Clarence Porter, and Decedent, Maxine Gillis, were a married couple.

20. On or about March 18, 2021, the Decedent was present at the VA Hospital with Plaintiff, Clarence Porter, who was receiving treatment at the facility.

21. Ms. Gillis suffered from the medical condition of dementia. Defendant, Pittsburgh VA and their staff, was made aware of this fact by Plaintiff, Clarence Porter, who ensured that all staff caring for him knew of the medical condition afflicting Ms. Gillis.

22. On the aforementioned date, Plaintiff was at the facility undergoing testing for medical conditions involving his heart. Defendant USA, by and through its staff, agents, or

employees, expressed to Plaintiff that Plaintiff, Clarence Porter, be held overnight for observation.

23. Mr. Porter requested that Ms. Gillis stay the night with him at the hospital.

24. Said Defendant, by and through its staff, agents, or employees, denied the request for Ms. Gillis to remain in the hospital overnight.

25. Said Defendant, by and through its staff, agents, or employees, did assume the responsibility of contacting transportation services for Ms. Gillis in order for Ms. Gillis to be safely transported to the home of Toni McClendon, Plaintiff's sister, situated at 2103 Park Hill Drive in Wilkinsburg, PA.

26. Defendant USA, by and through its staff, agents, or employees, utilized Defendant Taxi as the service hired to ensure the safe departure and arrival of Ms. Gillis from the hospital to the home of Toni McClendon.

27. On or about late evening of March 18, 2021, Defendant Taxi, by and through its agents, staff, or employees, arrived to transport Ms. Gillis to the aforementioned address.

28. Upon information and belief, standard procedure for pick-ups and drop-offs for VA healthcare recipients and/or their family members with known medical issues, consists of of two (2) primary methods of safe delivery, i.e., "hand to hand" transport or "door to door" transport.

29. To simplify these terms, "door to door" is a less strict, more common approach, similar to any taxi service, where the driver simply transports a person(s) from one location to a requested destination, without necessarily ensuring the person(s)' safe arrival to their final destination.

30. However, "hand to hand" transport, employed for persons with great physical and mental disabilities or handicaps, like Plaintiff's Decedent, occurs where the driver of the taxi is required to personally escort the handicapped individual from the driver's hand to the hand of the person or persons receiving the handicapped person at the final destination point.

31. In the "hand to hand" transport scenario described herein, both Defendant USA and Defendant Taxi have duties, carved out over time and with regular practice and experience, to competently and effectively communicate any and all physical and/or mental handicaps, limitations, deficiencies or shortcomings of any person(s) involved in the transportation, be it VA healthcare recipient or a family member of said VA healthcare recipient, to ensure that the correct safety approach is adopted for the transport, i.e., whether to utilize door to door transport or hand to hand transport.

32. In the early hours of March 19, 2021, in or around the time of 1:08 a.m., Ms. Gillis was dropped off at her destination by way of the "door to door" method, which was not consistent highest standard of care afforded disabled, handicapped persons, such as Plaintiff's Decedent, Maxine Gillis, given the dementia she was suffering from.

33. Plaintiff, through counsel, has long since requested all defendants in this suit abstain from destroying or corrupting any potential evidence in this case by manner of spoliation letter.

34. Defendant USA has a duty to inform the transportation service it selects of any particular disability or handicap, be it physical or mental, of any person(s) it is offering to aid in transportation.

35. Defendant Taxi has a duty to take the dispatched information it receives regarding any pertinent disability or handicap afflicting any person(s) it seeks to transport from the VA

hospital and effectively communicate said information to the driver responsible for the direct transport of the infirmed person(s) such that a safe transport may occur.

36. According to information and belief derived from discussions with witnesses and investigation in this matter, Plaintiff's Decedent, Maxine Gillis, never arrived at the final, intended destination of Toni McClendon's home.

37. At some point during the early hours of March 19, 2021, Ms. Gillis exited the Taxi she was a passenger in, without the transport driver assuring a safe reception with Toni McClendon, and, Ms. Gillis, upon information and belief, began walking, all alone, along a main thoroughfare.

38. On or about March 19, 2021, in or around the time of 3:40 a.m., a request was made by Plaintiff's family, claiming Ms. Gillis failed to arrive at the specified location.

39. Sadly, later that same morning, Ms. Gillis was found dead in a swimming pool owned by Defendant, De Voka Gordon, located at 2285 William Penn Highway in Wilkinsburg, PA, approximately two (2) miles from the location where she was to be delivered.

40. Defendant Gordon is an adult individual and private homeowner of the real estate listed directly above.

41. Ms. Gordon is the owner of a swimming pool on the property.

42. Ms. Gordon's swimming pool is enclosed, as required by law, by a structure which, if properly maintained, would prevent persons from entering the swimming pool.

43. Ms. Gordon had a duty under Pennsylvania law to ensure that her swimming pool was maintained in a safe manner.

44. Upon information and belief after investigation in this matter, it is not in dispute that Defendant Gordon failed to safely close, secure, latch, lock, etc., the gate access to the

pool area at her home, which was left either opened or unlocked and not sufficiently secured, which represents a gross breach of the standard of care for person owning pools in the locale wherein Ms. Gordon lived.

45. Ms. Gordon failed to ensure that the safety enclosure employed in or around her swimming pool was self-closing or self-latching.

46. It was determined by the Allegheny County Medical Examiner that the cause of death of Ms. Gillis was accidental drowning.

47. Ms. Gillis's death was a direct and proximate result of several breaches identified above by the named Defendants in this matter.

48. According to Toni McClendon, sister of Plaintiff, Clarence E. Porter, she received a telephone call from staff at the VA Pittsburgh Healthcare System on March 18-19, 2021, specifically, a member of the hospital's emergency department, likely a social worker, requesting that Ms. McClendon "watch and keep Ms. Gillis in my apt over nite or longer." *See written statement of Toni McClendon, attached hereto as Exhibit "B".*

49. Ms. McClendon stated that "VA personel (sp?) offered the Taxi." *Id.*

50. Ms. McClendon, upon information and belief, told the VA Pittsburgh social worker to drop Ms. Gillis at the 2103 Park Hill Drive, Apt. D, residence, in the rear of the residence and made said agreement regarding plans and arrangements with a VA social worker whom she spoke to over the telephone. *Id.*

51. Ms. McClendon remained at her back door, looking outside for Ms. Gillis, who never arrived. *Id.*

**COUNT I**
**Wrongful Death**
*Clarence E. Porter, as Administrator of the Estate of Maxine Gillis v. United States of America*

52. The foregoing paragraphs are incorporated herein as though fully set forth below.

53. At all times relevant hereto, the medical and healthcare agents, servants and employees of the Pittsburgh VA Medical Center who knew of or were aware of the Plaintiff's Decedent's medical disability of dementia, all of whom were acting within the course and scope of their agency or employment, owed to the Plaintiff's Decedent a duty to act in a manner consistent with the professional standards of care applicable to their respective specialties.

54. At all times material hereto, Pittsburgh VA Medical Center owed a duty to the Plaintiff's Decedent to exercise the care to ensure the safe transportation of Decedent.

55. The Defendant, United States of America, along with the Pittsburgh VA Medical Center, and their respective agents, ostensible agents, servants and employees, all of whom were acting within the course and scope of their agency or employment, deviated from good and acceptable standards, and were negligent in the following particulars:

    a. In failing to allow Plaintiff's request that Decedent stay the night with Plaintiff, given Decedent's known medical condition;

    b. In failing to request, recommend or order the safe transportation of Plaintiff's Decedent by making it known to Defendant Taxi that the transportation would require special treatment due to Decedent's known medical condition;

    c. In failing to ensure and engage in proper communication and coordination between agents, servants, employees, departments, and medical disciplines

      working within the Pittsburgh VA Medical Center, so that they were all on the "same page" as to the overall plan of care to ensure the safe transportation of Decedent;

    d. In failing to properly document and record the patient's personal history in a continuous, comprehensive and conspicuous manner.

56. As a direct and proximate result of the negligence and carelessness described hereinabove, the Decedent who suffered from dementia, was not allowed to stay at the Pittsburgh VA and through the lack of informed communication to the transportation service died as a consequence thereof.

57. As a further direct and proximate result of the conduct of Defendant United States and its agents, servants and/or employees, Decedent was forced to endure great suffering, discomfort, confusion, burden and inconvenience on the date of her death.

58. During her lifetime, Decedent did not commence any action to recover damages for the injuries which caused her death and no other actions have been filed to recover damages for her wrongful death.

59. Pursuant to 42 Pa.C.S.A. §8301, this claim is being brought for the recovery of injuries and damages.

60. Decedent was 79 years of age at the time of her death and left her Husband Clarence Porter as a wrongful death heir.

    a. Clarence Porter
       141 Marlow Drive
       Penn Hills, PA 15235

61. By reason of the Decedent's death, said wrongful death heir has been deprived of the consortium, services, companionship, society, and comfort of Decedent.

62. By reason of the Decedent's death, said wrongful death heir has suffered and will continue to suffer profound emotional and psychological loss.

63. By reason of the Decedent's death, said wrongful death heir has suffered pecuniary loss, including expenses incurred for Decedent's funeral and burial expenses, and other items, including expenses of the administration of the Decedent's Estate.

WHEREFORE, Plaintiff claims all damages recoverable under the applicable laws of this Commonwealth against the Defendant, individually or jointly and severally.

## COUNT II
### Survival
### *Clarence E. Porter, as Administrator of the Estate of Maxine Gillis v. United States of America*

64. Plaintiff incorporates the foregoing paragraphs by reference and make them part of this Count as though fully set forth herein.

65. Plaintiff brings this action on behalf of the Estate of Maxine Gillis, deceased, under and by virtue of the laws of the Commonwealth of Pennsylvania and other applicable statutes, including 20 Pa.C.S.A. §3373 and 42 Pa.C.S.A. §8302 to recover all damages of whatsoever nature to which said Estate is entitled by reason of the death of Decedent under the laws governing survival actions.

66. Plaintiff claims on behalf of the Estate the damages suffered by the Estate by reason of the death of Plaintiff Decedent, including the Decedent's medical expenses, and the physical and mental pain, suffering, discomfort, burden, inconvenience, embarrassment and loss of the pleasures of life.

WHEREFORE, Plaintiff claims all damages recoverable under the applicable laws of this Commonwealth against the Defendant, individually or jointly and severally.

## COUNT III
## Wrongful Death
### *Clarence Porter, as Administrator of the Estate of Maxine Gillis v. Classy Cab Company, Inc.*

67. The foregoing paragraphs are incorporated herein as though fully set forth below.

68. At all times relevant hereto, the agents, servants and employees of the Taxi Defendant learned of and/or became aware of or knew of the Plaintiff's Decedent's medical disability, i.e., that Maxine Gillis was suffering from dementia.

69. At all times pertinent hereto, Taxi Defendant, by and through its agents, staff, or employees, all of whom were acting within the course and scope of their agency or employment, owed to the Plaintiff's Decedent a duty to act in a manner consistent with the standards of care applicable to the industry for transportation of disabled persons.

70. At all times material hereto, Defendant Taxi owed a duty to the Plaintiff's Decedent to exercise the appropriate care and skill of a similarly situated transportation agency to ensure the safe transportation of Decedent.

71. The Defendant and their respective agents, ostensible agents, staff, or employees, all of whom were acting within the course and scope of their agency or employment, deviated from good and acceptable standards, and were negligent in the following particulars:

    a. In failing to request or ascertain the minimum necessary information regarding the Plaintiff's Decedent's health condition which would appropriately determine a "hand to hand" transportation was applicable under the circumstances;

    b. In failing to ensure the proper final destination of Plaintiff's Decedent prior to removing Ms. Gillis from the taxi;

    c. In failing to adopt and employ the standard technique of "hand to hand" delivery of a person with known disabilities to the home of Plaintiff's sister, Toni McClendon;

    d. In failing to appropriately assess and/or question the assessment made by the VA regarding the known medical condition of Plaintiff's Decedent and the type of transport required to ensure safe transport of Plaintiff's Decedent;

    e. In failing to ensure and engage in proper communication and coordination between agents, staff, or employees with the Pittsburgh VA Medical Center, so that all agreed as to the execution of the plan to ensure the safe arrival of Maxine Gillis to her final intended destination on the night and early morning of March 18-19, 2021;

    f. In failing to properly transport Ms. Gillis by way of the aforementioned "hand to hand" method that would ensure the safety of Plaintiff's Decedent.

72. As a direct and proximate result of the negligence and carelessness described hereinabove, the Decedent, who suffered from dementia and generally as a result of the lack of, or poor, communication efforts between Defendants listed above, wandered from the place she was dropped off by the Taxi service and drowned in a swimming pool owned by Defendant, De Voka Gordon.

73. As a further direct and proximate result of the conduct of Taxi Defendant and its agents, staff, or employees, Decedent was forced to endure great suffering, discomfort, confusion, burden, and inconvenience on the date of her death.

74. During her lifetime, Decedent did not commence any action to recover damages for the injuries which caused her death and no other actions have been filed to recover damages for her wrongful death.

75. Pursuant to 42 Pa.C.S.A. §8301, this claim is being brought for the recovery of injuries and damages.

76. Decedent was 79 years of age at the time of her death and left her Husband Clarence Porter as a wrongful death heir.

    a. Clarence Porter
       141 Marlow Drive
       Penn Hills, PA 15235

77. By reason of the Decedent's death, said wrongful death heir has been deprived of the consortium, services, companionship, society, and comfort of Decedent.

78. By reason of the Decedent's death, said wrongful death heir has suffered and will continue to suffer profound emotional and psychological loss.

79. By reason of the Decedent's death, said wrongful death heir has suffered pecuniary loss, including expenses incurred for Decedent's funeral and burial expenses, and other items, including expenses of the administration of the Decedent's Estate.

WHEREFORE, Plaintiff claims all damages recoverable under the applicable laws of this Commonwealth against the Defendant, individually or jointly and severally.

## COUNT IV
### Survival Action
*Clarence Porter, as Administrator of the Estate of Maxine Gillis v. Classy Cab Company, Inc.*

80. Plaintiff incorporates the foregoing paragraphs by reference and make them part of this Count as though fully set forth herein.

81. Plaintiff brings this action on behalf of the Estate of Maxine Gillis, deceased, under and by virtue of the laws of the Commonwealth of Pennsylvania and other applicable statutes, including 20 Pa.C.S.A. §3373 and 42 Pa.C.S.A. §8302 to recover all damages of whatsoever nature to which said Estate is entitled by reason of the death of Decedent under the laws governing survival actions.

82. Plaintiff claims on behalf of the Estate the damages suffered by the Estate by reason of the death of Plaintiff Decedent, including the Decedent's medical expenses, and the physical and mental pain, suffering, discomfort, burden, inconvenience, embarrassment and loss of the pleasures of life.

WHEREFORE, Plaintiff claims all damages recoverable under the applicable laws of this Commonwealth against the Defendant, individually or jointly and severally.

### COUNT V
### Wrongful Death
*Clarence E. Porter, as Administrator of the Estate of Maxine Gillis v. De Voka Gordon*

83. The foregoing paragraphs are incorporated herein as though fully set forth below.

84. At all times material hereto, De Voka Gordon owed a duty to the Plaintiff's Decedent to exercise the care of a similarly situated homeowner in Pennsylvania owning a swimming pool.

85. The Defendant, De Voka Gordon, deviated from good and acceptable standards, and was negligent in the following particulars:

    a. In failing to appropriately and properly safeguard against the danger Defendant Gordon created;

    b. In failing to warn unsuspecting persons of the dangers and hazards associated with the swimming pool on Defendant Gordon's property;

    c. In failing to affix the required type of safety latch to the entrance of swimming pool, which is a per se failure under Pennsylvania law;

    d. In failing to secure the driveway gate that leads to the entrance of the swimming pool where decedent drowned;

86. As a direct and proximate result of the negligence and carelessness described hereinabove, the Decedent accessed an unsecured entrance that led to a swimming pool and died after falling in the swimming pool and drowning.

87. As a further direct and proximate result of the conduct of Defendant Gordon, Decedent was forced to endure great suffering, discomfort, confusion, burden, and inconvenience on the date of her death.

88. During her lifetime, Decedent did not commence any action to recover damages for the injuries which caused her death and no other actions have been filed to recover damages for her wrongful death.

89. Pursuant to 42 Pa.C.S.A. §8301, this claim is being brought for the recovery of injuries and damages.

90. Decedent was 79 years of age at the time of her death and left her Husband Clarence Porter as a wrongful death heir.

    a. Clarence Porter
       141 Marlow Drive
       Penn Hills, PA 15235

91. By reason of the Decedent's death, said wrongful death heir has been deprived of the consortium, services, companionship, society, and comfort of Decedent.

92. By reason of the Decedent's death, said wrongful death heir has suffered and will continue to suffer profound emotional and psychological loss.

93. By reason of the Decedent's death, said wrongful death heir has suffered pecuniary loss, including expenses incurred for Decedent's funeral and burial expenses, and other items, including expenses of the administration of the Decedent's Estate.

WHEREFORE, Plaintiff claims all damages recoverable under the applicable laws of this Commonwealth against the Defendant, individually or jointly and severally.

## COUNT VI
### Survival Action
*Clarence E. Porter, as Administrator of the Estate of Maxine Gillis v. De Voka Gordon*

94. The foregoing paragraphs are incorporated herein as though fully set forth below.

95. Plaintiff brings this action on behalf of the Estate of Maxine Gillis, deceased, under and by virtue of the laws of the Commonwealth of Pennsylvania and other applicable statutes, including 20 Pa.C.S.A. §3373 and 42 Pa.C.S.A. §8302 to recover all damages of whatsoever nature to which said Estate is entitled by reason of the death of Decedent under the laws governing survival actions.

96. Plaintiff claims on behalf of the Estate the damages suffered by the Estate by reason of the death of Plaintiff Decedent, including the Decedent's medical expenses, and the physical and mental pain, suffering, discomfort, burden, inconvenience, embarrassment and loss of the pleasures of life.

WHEREFORE, Plaintiff claims all damages recoverable under the applicable laws of this Commonwealth against the Defendant, individually or jointly and severally.

Respectfully submitted,

*/s/ Matthew J. Scanlon*

_____

Matthew J. Scanlon, Esq.