UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CLARENCE E. PORTER, as Administrator of the Estate of MAXINE GILLIS, deceased,<br><br>Plaintiff,<br><br>-v-<br><br>UNITED STATES OF AMERICA; CLASSY CAB COMPANY, INC.; and DE VOKA GORDON, an individual,<br><br>Defendants. | Case No.: 2:22-cv-734 |

**DEFENDANT CLASSY CAB COMPANY, INC.'S BRIEF IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)**

Defendant, Classy Cab Company, Inc. ("Classy Cab"), by and through its counsel, Lewis, Brisbois, Bisgaard & Smith, LLP, and files the within Brief in Support of Motion to Dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), and avers as follows:

**I.  FACTS AND BACKGROUND**

Plaintiff, Clarence Porter ("Mr. Porter"), as Administrator of the Estate of Maxine Gillis ("Plaintiff-decedent" or "Ms. Gillis"), filed this lawsuit via Complaint (Doc. 1) on May 17, 2022, against Defendants United States of America, Classy Cab, and De Voka Gordon ("Defendant Gordon").  The Complaint alleges that Mr. Porter was a patient at the Medical Center operated by the United States Department of Veterans Affairs in Pittsburgh ("Pittsburgh VA") on March 18, 2021. (Doc. 1, ¶ 20)  He presented to the medical center with his wife, Ms. Gillis, but was told he would need to be admitted to the hospital overnight for testing. (Doc. 2, ¶ 22)  It is alleged that Mr. Porter made the staff at the Pittsburgh VA aware of the medical condition of his wife, as she suffered from dementia, and asked that she be permitted to spend the night with him at the hospital.

(Doc. 1, ¶¶ 21, 23)  The Pittsburgh VA denied this request and instead undertook to arrange for transportation of Ms. Gillis to the home of Mr. Porter's sister, Toni McClendon, in Wilkinsburg, PA. (Doc. 1, ¶¶ 24-25)  The Complaint goes on to state that the Pittsburgh VA contacted Classy Cab to request that Ms. Gillis be transported to the home of Ms. McClendon, and a cab arrived to transport her in the early evening on March 18, 2021. (Doc. 1, ¶¶ 26-27)  Ms. Gillis was allegedly dropped off at the intended destination in Wilkinsburg on March 19, 2021 at approximately 1:08 a.m., and that the cab driver utilized the so-called "door-to-door" method of drop-off. (Doc. 1, ¶ 32)  When it was determined that Ms. Gillis did not arrive at Ms. McClendon's apartment, it was determined that she had walked along the road after leaving the cab, and was found later that morning, deceased, in a swimming pool owned by Defendant Gordon.   (Doc. 1, ¶¶ 36-39)

The Complaint includes two Counts as to Classy Cab, a count for wrongful death on behalf of Mr. Porter and a Survival Action on behalf of Ms. Gillis, alleging that it was negligent in its transport and duty to Ms. Gillis. (Doc. 1, ¶¶ 67-82).  Classy Cab now files the within Brief in support of its Motion to Dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted.

II.   **LAW**

   A.  **Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing *Twombly*, 550 U.S. at 556). A court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. *Lenhart v. Huntington Ins., Inc.*, Civil Action No. 16-212, 2016 U.S. Dist. LEXIS 75415, at *5 (W.D. Pa. June 8, 2016); citing generally *In re Insurance Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). This Court has explained:

> In *Iqbal*, the Court laid out a two-part approach to reviewing a motion to dismiss under Rule 12(b)(6). First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive the motion; "instead, 'a complaint must allege facts suggestive of [the proscribed] conduct.'" Second, the court must determine whether the complaint "states a plausible claim for relief, . . . [which is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Only if "the '[f]actual allegations...raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted.

*Id*. at 5-6 (internal citations omitted). The United States Court of Appeals for the Third Circuit has articulated a three point process for determining the sufficiency of a Complaint, holding that a Court must (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement for relief." *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted).

    B.  **Applicable Law**

Under Pennsylvania law, a negligence claim consists of four elements: (1) a duty or obligation recognized by the law, requiring the actor to conform to a certain standard of conduct; (2) a failure to conform to the required standard; (3) a causal connection between the conduct and

the resulting injury; and (4) actual loss or damage resulting to the interests of another. *See Rabutino v. Freedom State Realty Co., Inc.*, 2002 Pa. Super. 318, 809 A.2d 933, 938 (Pa. Super. 2002); *Kleinknecht v. Gettysburg College*, 989 F.2d 1360, 1366 (3d Cir. 1993)

The duty imposed on a common carrier, such as Classy Cab, is higher than the standard of normal motorist. As the Pennsylvania Supreme Court has stated, "[w]hile a common carrier for hire is not an insurer of the safety of its passengers, it must exercise at all times the highest degree of care, vigilance and precaution in their transportation." *Dayen et vir v. Penn Bus Co.,* 363 Pa. 176, 69 A.2d 151. The Court expanded on this proposition by stating "A common carrier for hire owes to its passengers the highest degree of care and diligence in carrying them to their destination and [in] enabling them to alight safely and to avoid any possible danger while doing so . . . It is the duty of a carrier of passengers to set them down at the terminus of their journey, and to afford them a sufficient time to alight in safety." *Brown v. Ambridge Yellow Cab Co.*, 374 Pa. 208, 212, 97 A.2d 377, 378-79 (1953) (internal citations omitted).

### III.  ARGUMENT

As outlined above, Plaintiffs have alleged two Counts as to Classy Cab, for wrongful death and survival, based on an allegation that Classy Cab was negligent in its transportation of Ms. Gillis on the morning of her death. As background, Plaintiff outlines the "standard procedure" for pick-ups and drop-offs at the VA healthcare centers consist of either "hand-to-hand" transport or "door-to-door" transport, with door-to-door transport being the more common approach, wherein the driver transports a person to the requested destination without ensuring the persons' safe arrival there. (Doc. 1, ¶¶ 28-29) As evidence of this standard procedure, Plaintiff's Complaint states only that communicating any and all physical and/or mental handicaps, limitations, deficiencies, or shortcomings is the duty "carved out over time with regular practice and experience." (Doc. 1, ¶

31)  The Complaint makes no allegations related to any breach of the agreement entered into between Classy Cab and the Department of Veterans Affairs for transportation of patients, as the transport of Ms. Gillis does not fall under that contract.

Specific to this matter, Plaintiffs allege that Classy Cab was negligent for breaching its duty to Ms. Gillis.  Specifically, the Complaint alleges that Classy Cab owed to Ms. Gillis a duty to act in a manner consistent with the standards of care applicable to the industry for transportation of disabled persons. (Doc. 1, ¶ 69)  In the proceeding paragraph, in a seemingly contrasting statement, the Complaint states only that Classy Cab owned a duty to Ms. Gillis to exercise the appropriate care and skill of a similarly situated transportation agency to ensure the "safe transportation" of Ms. Gillis. (Doc. 1, ¶ 70)  Finally, the Complaint sets forth several particulars which allegedly evidence the negligence of Classy Cab and its employee including failing to request or ascertain the minimum necessary information related to Ms. Gillis's health condition, failing to sure the proper final destination prior to removing Ms. Gillis from the taxi, in faiing to adopt and employ the standard "hand-to-hand" delivery of a person with known disabilities, in failing to appropriately assess and or/or question the assessment made by the Pittsburgh VA regarding the known medical condition of Ms. Gillis, in failing to ensure and engage in proper communication between employees of the Pittsburgh VA and its employees, and in failing to properly transport Ms. Gillis. (Doc. 1, ¶ 71)

The Plaintiff's claims that Classy Cab was negligent for the reasons set forth above  must fail, as there simply is no evidence that the standards Plaintiff is attempting to impose on Classy Cab are recognized by Pennsylvania Courts.  It is not disputed that a common carrier is held to a higher standard of care as related to passengers than other motorists. *Dayen et vir v. Penn Bus Co., supra.*  However, this does not imply that Plaintiffs are free to fabricate specific duties of a

common carrier to its passengers in order to fit the fact pattern of an unfortunate incident. First, it is noted the transport of Ms. Gillis was not a transport which fell under the contractual relationship between Classy Cab and the Pittsburgh VA, as Ms. Gillis is not a patient of the Pittsburgh Hospital. As such, Ms. Gillis's transport was akin to any other transaction in which Classy Cab arrived to pick up a passenger and transport them to a requested location. Additionally, as admitted by Plaintiff in the Complaint, the Pittsburgh VA personnel failed to communicate to Classy Cab's employees that Ms. Gillis suffered from a mental disability of any kind. (Doc. 1, ¶ 55(b))  As such, contrary to Plaintiff's contention in the Complaint, the duties of Classy Cab were not that which were due to disabled person, as Classy Cab was not informed by any of the Pittsburgh VA personnel that Ms. Gillis suffered from a mental disability. Further, there is no allegation to support the proposition that Classy Cab was required to ascertain additional information from the Pittsburgh VA personnel as to the status of a standard passenger such as Ms. Gillis, or to either independently assess the mental state of Ms. Gillis or question the assessment made the Pittsburgh VA personnel of her mental state, as alleged in the Complaint.

In light of the above, Classy Cab was not required to employ any specific "hand-to-hand" transportation method in relation to Ms. Gillis, a standard taxi fare customer. Regardless, Plaintiff is attempting to hold Classy Cab responsible for injury which occurred after Ms. Gillis safely exited the vehicle. However, Courts in Pennsylvania other states have specifically declined to hold a common carrier liable for incidents which occurred outside of a company vehicle. In 2010, Judge William Ford of the Court of Common Pleas of Dauphin County granted a Motion for Summary Judgment filed on behalf of the taxi company defendant when it was found that the deceased Plaintiff-decedents were killed while walking down a main street because the defendant taxi company did not pick up the Plaintiff-decedents, due to their inability to provide a destination

address. *Polukard v. 1160 Inc.*, 2010 Pa. Dist. & Cnty. Dec. LEXIS 899.  In the *Polukard* matter, the Court focused on the idea that showing proximate cause between the act and the injuries is paramount to a showing of negligence. *Id*. at 12.  Further, the Court noted that whether there is proximate cause between the two is a matter of law. *Id*.  The Court went on to explain that even if a fact pattern passes the "but-for" test to show factual cause, showing that there is proximate cause requires a showing that the defendant's acts or omissions were a substantial factor in bringing about the plaintiff's harm. *Id.* at 13*, citing Brown v. Philadelphia College of Osteopathic Medicine,* 2000 PA Super 262, 760 A.2d 863, 869 (Pa.Super. 2000).  According to the Restatement of Torts, there are several factors which are important in determining whether the actor's conduct is a substantial factor in bringing about harm to another, including:

> (a) the number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it;
>
> (b) whether the actor's conduct has created a force or a series of forces which are in continuous and active operation up to the time of the harm, or has created a situation harmless unless acted upon by other forces for which the actor is not responsible; [and]
>
> (c) lapse of time.

*Id*.; Restatement of Torts § 433 (1965).  The Dauphin County Court ultimately held that there were a number of other factors which contributed to the tragic death of Plaintiff-decedents, and that the conduct of the taxi company in declining to send a car to pick them up did not create a "force or series of forces" which were "continuous and active operation up to the time of" the deaths. *Id*. at 16.

Similarly, the Supreme Judicial Court of Maine upheld a grant of summary judgment in favor of a defendant cab company in a case in which the Plaintiff-decedent requested a cab service, requested to be dropped off at a location where his car was located, then chose to drive his car

intoxicated and died in a single-car accident. *Mastriano v. Blyer,* 779 A.2d 951 (ME 2001). Similarly to Pennsylvania Courts, the Maine Courts impose a higher standard on common carriers, holding as follows:

> A common carrier owes its passengers a duty that requires "'the exercise of the highest degree of care compatible with the practical operation of the machine in which the conveyance was undertaken." This heightened standard of care continues until the carrier has given its passenger a reasonably safe discharge at a reasonably safe location.

*Id*. (citations omitted). The court relied on the general principle that "absent a special relationship, the law imposes no duty to protect someone from danger unless the dangerous condition was created by the defendant." *Id*., citing *Jackson v. Tedd-Lait Past No. 75, Am. Legion*, 723 A.2d 1220, 1221 (ME 1999). Finally, the Court noted that the Mastriano case was not one in which the forces that would harm the passenger were unleashed or apparent, or where the sanger at the drop-off site was reasonably foreseeable. *Id*. at 955-956. As such, no liability was imposed on the driver for the injury which occurred after the passenger exited the vehicle.

When applied to the facts of the instant case, it is clear that Classy Cab cannot be held liable for any injuries sustained after Ms. Gillis voluntarily exited the vehicle. Under the analysis of the *Polukard* opinion it is clear from Plaintiff's Complaint that a number of factors contributed to the harm which came of Ms. Gillis, not the least of which was the failure of the Pittsburgh VA personnel to alert Classy Cab and its employees that Ms. Gillis suffered from a mental disability and required special care, or the fact that a gate at a nearby pool was left unlocked. As such, there is not sufficient information in the Complaint to show that any actions of Classy Cab were the proximate cause of Ms. Gillis's tragic death. Similarly, with no knowledge as to any specific mental disabilities or medical conditions of Ms. Gillis, and no way to know that a nearby pool was left for anybody to access, there was no way for the driver of the cab to foresee there would be any

danger at the drop-off point.  As the call to Classy Cab was placed as a standard fare rather than a transport of a patient pursuant to the contract, Classy Cab employees acted in a way which was standard for the duty owed to Ms. Gillis at the time.

### IV.     CONCLUSION

For the reasons set forth above, the allegations against Classy Cab in Plaintiff's Complaint must be dismissed with prejudice.

        Respectfully submitted,

        LEWIS BRISBOIS BISGAARD & SMITH, LLP

        By: */s/ Ashley N. Rodgers*
            Ashley N. Rodgers, Esquire
            PA I.D.:  314017
            One PPG Place, 28th Floor
            Pittsburgh, PA  15222
            ashley.rodgers@lewisbrisbois.com
            412-567-5596 (Telephone)

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the within Notice of Appearance has been served upon all counsel of record via the Court's ECF system, on this 29th day of August, 2022.

                              LEWIS BRISBOIS BISGAARD & SMITH, LLP

                              By: */s/ Ashley N. Rodgers*
                                   Ashley N. Rodgers, Esquire
                                   *Counsel for Defendant , Classy Cab Company, Inc., incorrectly identified as Classy Cab Company, Inc., t/a/d/b/a Star Transportation Group, Inc., Air Start Transportation and Limousine Service, Inc., Cranberry Taxi, Inc. and Veteran's Taxi*